NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALESSANDRA DE FATIMA LOMEU, <br><br> Petitioner, <br><br> v. <br><br> LUIS SOTO *et al.*, <br><br> Respondents | No. 25cv16589 (EP) <br><br> **OPINION** |

**PADIN, District Judge.**

This matter comes before the Court on Petitioner Alessandra De Fatima Lomeu's Motion for a Temporary Restraining Order and Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 filed October 15, 2025. D.E. 3 at 1-2 ("Motion for TRO"), *id.* at 2-23 ("Amended Petition").[1] Respondents filed a full answer to the Amended Petition ("Answer"). Lomeu timely

---

[1] While Lomeu's pleading is referred to as "Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241" it is a hybrid pleading that also seeks equitable injunctive relief for unconstitutional conditions of confinement under 28 U.S.C. § 1331. The Court reviewed Lomeu's Motion for TRO and Amended Petition and issued a text order enjoining Respondents from transferring Lomeu outside this Court's jurisdiction pending a hearing on this matter. D.E. 4 ("Oct. 16 Text Order"). The Court further ordered Respondents to file a response to the conditions of confinement allegations in Lomeu's Motion for TRO by 3:00 p.m. on October 17, 2025, and to file a full Answer to the Amended Petition, and a response to the remaining allegations in Lomeu's Motion for TRO by October 22, 2025, with Lomeu's Reply Brief due by October 27, 2025. (*Id.*)

That same day, Lomeu filed a Motion to Show Cause for Contempt and for Enforcement of Temporary Restraining Order, alleging Respondents violated this Court's Oct. 16 Text Order by transferring Lomeu outside this Court's jurisdiction to Houston Contract Detention Facility at 7:23 p.m. on October 16. D.E. 5, ("Motion to Show Cause"). In response, this Court issued a Text Order on October 17, 2025, ordering Respondents to file a response to the Motion to Show Cause by 3:00 p.m. that same day. D.E. 6, ("Oct. 17 Text Order"). Respondents timely filed, as one document, their Answer to the Amended Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, Opposition to the Motion for Temporary Restraining Order, and Response to the Motion to Show Cause. D.E. 7 ("Answer" and "Opp'n to TRO" and "Response to OTSC"). Upon Review

filed her reply brief. D.E. 9 ("Reply Brief"). The Court, having reviewed all pleadings, motions, and supporting documents, and having determined that oral argument is unnecessary, *see* Fed. R. Civ. P. 78(b), L. Civ. R. 78. l(b), finds that Lomeu is entitled to habeas relief in the form of a bond hearing pursuant to 8 C.F.R. § 236.1(d), for the reasons set forth below.

I.   **BACKGROUND**

Lomeu, a citizen of Brazil, entered the United States near Hidalgo, Texas around June 14, 2005, at the age of 23, and has lived in the United States ever since. D.E. 7-1, Ex. A ("Notice to Appear" or "NTA"); D.E. 3 at 24-29, Ex. A ("Lomeu Decl.") ¶¶ 1, 5. The day after her entry into the United States, she was served with a Notice to Appear by U.S. Customs and Border Patrol ("CBP"), charging her with violation of 8 U.S.C. § 1182(a)(6(A)(i), as an alien[2] present without admission or parole into the United States. *See* NTA. Along with the NTA, CBP issued a form I-213, stating that Lomeu entered the U.S. at a place not designated as a port of entry, "thus she was not admitted, inspected or paroled into the U.S. by a U.S. Immigration Official." D.E. 7-2, Ex. B ("2005 I-213"). Also that day, Lomeu submitted a "Notice of Rights and Request for Disposition" seeking a determination of whether she could remain in the U.S. D.E. 7-3, Ex. C ("Not. of Rights and Req. for Disp."). Lomeu was processed, required to provide contact information, and released on her own recognizance "due to lack of camp space" expressly pursuant to "section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations." 2005 I-

---

of Respondents' Response to OTSC, the Court denied Petitioner's Motion to Show Cause for Contempt. D.E. 8 ("Second Oct. 17 Text Order"). Immigration and Customs Enforcement ("ICE") informed counsel that on October 16, 2025, at 9:21 a.m., Lomeu was "booked out of Delaney Hall en route to the Houston Contract Detention Facility," *i.e.*, before this Court issued its text order enjoining Lomeu's transfer at 11:47 a.m. Response to OTSC at 7-8.

[2] The Court will use the term "alien," in the immigration statutes, interchangeably with the term "noncitizen."

213; D.E. 7-4, Ex. D ("Not. of Custody Determination").  An immigration judge ordered Lomeu removed *in absentia* on May 11, 2006.  D.E. 7-6, Ex. F ("*In Absentia* Removal Order").

Lomeu married a U.S. citizen, Hudson Rodrigues Almeida, on May 24, 2014, and became stepmother to Allyson, age ten, and Ashley, age eight at the time of her marriage.  Lomeu Decl. ¶¶ 7-8.  For more than twenty years, Lomeu abided by the laws of this country.  *Id.* ¶ 25.

Lomeu later requested to reopen her immigration proceedings, and her request was granted by an Immigration Judge ("IJ") on July 20, 2021.  D.E. 7-7, Ex. G ("July 20, 2021 IJ Order").  On March 14, 2025, Lomeu's husband filed an I-130 Petition for Alien Relative with U.S. Citizenship and Immigration Services ("USCIS") on her behalf.  D.E. 3, Ex. B ("Not. of I-130") at 36-37.  On May 6, 2025, Lomeu filed an I-485 Application to Register Permanent Residence or Adjust Status, D.E. 3, Ex. C "Not. of I-485" at 39-42, and an Application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents, D.E. 3, Ex. D ("Not. of EOIR 42B") at 44.  On June 18, 2025, Lomeu filed form I-765, Application for Employment Authorization. D.E. 3, Ex. E ("Not of I-765") at 47.  Lomeu's I-130, I-485, 42B, and I-765 proceedings remain pending.  Amended Petition ¶¶ 26-29.

When Lomeu reported to be fingerprinted for her I-765 Application for Employment Authorization on October 2, 2025, ICE arrested her and detained her at Delaney Hall Detention Facility in Newark, New Jersey ("Delaney Hall").  D.E. 7-5, Ex. E ("2025 I-213").  She was transferred to Houston Detention Facility on October 16, 2025.  Response to OTSC at 7.

Lomeu's Amended Petition contains three claims for relief.  Amended Petition at 19-20.[3] She asserts jurisdiction under 28 U.S.C. § 2241, 28 U.S.C. § 1331, and the Suspension Clause of

---

[3] The Amended Petition begins with Paragraphs 1-80. The paragraph numbering for each count of the Amended Petition begins with Paragraph 1.  Thus, to avoid confusion, the Court will cite to

3

the U.S. Constitution, Article I, § 9, cl. 2, and contends this Court may grant relief pursuant to the All Writs Act, 28 U.S.C. § 1651, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq. Id.* ¶ 13. In Count 1, Lomeu asserts her detention is in violation of her constitutional right to substantive due process under the Fifth Amendment because she has been detained pending removal proceedings without posing a flight risk or danger to the community. *Id.* at 19. In Count 2, Lomeu asserts Respondents have deprived her of her Fifth Amendment right to procedural due process. *Id.* at 19-20. Counts 1 and 2, which incorporate by reference all allegations contained in the preceding paragraphs, maintain Lomeu is unlawfully detained under 8 U.S.C. § 1225(b)(2)(A) based on the BIA's erroneous statutory interpretation in *Hurtado*,[4] a claim related to but distinct from her constitutional claims. Amended Petition ¶¶ 42-45; *see* 28 U.S.C. § 2241(c)(3) (extending the writ of habeas corpus to persons in custody under the laws of the United States). In Count 3, Lomeu claims she was subjected to punitive conditions of confinement at Delaney Hall in violation of her Fifth Amendment right to substantive due process. *Id.* at 20.

Respondents oppose the Amended Petition. Answer. They argue Lomeu's detention is lawful under 8 U.S.C. § 1225(b)(2) and comports with due process. *Id.* at 9-18. Based on Lomeu's detention pursuant to § 1225(b)(2), Respondents contend she does not have a due process right to release from detention pending removal proceedings. *Id.* at 19. Finally, Respondents submit the Court lacks jurisdiction over Lomeu's conditions of confinement claim under 28 U.S.C. § 2241, *id.* at 20-25, and the conditions of confinement claim is moot because Lomeu is no longer confined in Delaney Hall, *id.* at 25-26.

---

the first 80 paragraphs of the Amended Petition by paragraph number and cite to the remaining pages of the Amended Petition by page number.

[4] *Matter of Yajure-Hurtado* ("*Hurtado*"), 29 I&N Dec. 215 (BIA 2025).

In her Reply Brief, Lomeu challenges Respondents' statutory interpretation, reiterates her claim that her detention violates her rights under the Fifth Amendment Due Process Clause, and seeks adjudication of her conditions of confinement claim under the capable of repetition yet evading review exception to the mootness doctrine. Reply Br.

## II. DISCUSSION

### A. Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2241(c)(3) to grant a writ of habeas corpus to a person in custody in violation of the Constitution, laws, or treaties of the United States. *Demore v. Kim*, 538 U.S. 510, 517 (2003). "[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). A habeas petitioner has "the burden of sustaining his allegations by a preponderance of evidence." *Walker v. Johnston*, 312 U.S. 275, 286 (1941). District Courts also have jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States" pursuant to 28 U.S.C. § 1331, and the ability to grant equitable relief in the absence of an exclusive statutory review scheme. *Semper v. Gomez*, 747 F.3d 229, 242 (3d Cir. 2014).

### B. The Conditions of Confinement Claim is Moot

Lomeu alleges that during her confinement in Delaney Hall, she was subjected to unsanitary conditions, lack of access to medications for her serious medical needs, and other punitive conditions such as overcrowding, frigid and painful sleeping conditions, denial of access to bathroom facilities overnight, and meals "identical to cat food." Amended Petition ¶¶ 59-80. Respondents contend this Court lacks jurisdiction over Lomeu's conditions of confinement claim, Answer at 21-25, and even assuming jurisdiction existed prior to Lomeu's transfer to Houston

5

Detention Facility, the conditions of confinement claim is moot, *id.* at 25-26. In her reply brief, Lomeu submits that this Court has habeas jurisdiction over her conditions of confinement claim, and her claim is not moot because she could be transferred back to Delaney Hall. *Id.* at 5-8.

Lomeu asserted her conditions of confinement claim under both 28 U.S.C. § 2241 and 28 U.S.C. § 1331. The Court finds jurisdiction under § 1331 for Lomeu to seek equitable relief to unconstitutional conditions of confinement.[5] *See Semper*, 747 F.3d at 242. The Court agrees that Lomeu's transfer from Delaney Hall to Houston Detention Facility rendered her conditions of confinement claim moot because a court may not "decide questions that cannot affect the rights of litigants in the case before them." *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003), as amended (May 29, 2003) (citation modified). Lomeu is no longer subject to the conditions she experienced at Delaney Hall. There is, however, an exception to the mootness doctrine "when (1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Parkell v. Danberg*, 833 F.3d 313, 333 (3d Cir. 2016) (citation modified). It is the plaintiff's burden to establish the capable of repetition yet evading review exception applies to mootness. *Id.* Mere conjecture that "the plaintiff might be reincarcerated and subjected to the same conditions again" does not establish the requisite burden of proof. *Id.*

---

[5] The Court need not determine the difficult question of whether extraordinary circumstances exist to permit Lomeu to bring a claim of unconstitutional conditions of confinement under 28 U.S.C. § 2241(c)(3). *See Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020) ("Given the extraordinary circumstances that existed in March 2020 because of the COVID-19 pandemic, we are satisfied that [the petitioners'] § 2241 claim seeking only release on the basis that unconstitutional confinement conditions require it is not improper.")

Based on this Court's finding, discussed below, that Lomeu is entitled to a bond hearing, which is likely to lead to her release,[6] her fear of return to the same conditions at Delaney Hall are no more than mere conjecture. Therefore, the Court will dismiss Count 3 of the Amended Petition as moot.

      **C.**      **Lomeu is Unlawfully Detained Pursuant to 8 U.S.C. § 1225(b)(2)(A), and has a Statutory Right and a Due Process Liberty Interest in a Bond Hearing Under 8 C.F.R. § 236.1(d)**

      *1.*      *Statutory Framework*

The parties disagree on the statutory basis for Lomeu's detention pending removal proceedings. The Supreme Court in *Jennings v. Rodriguez* succinctly described the difference between the statutory provisions at issue here, beginning with two situations immigration officials encounter in making admission or removal decisions.

> Every day, immigration officials must determine whether to admit or remove the many aliens who have arrived at an official "port of entry" (*e.g.*, an international airport or border crossing) or who have been apprehended trying to enter the country at an unauthorized location. Immigration officials must also determine on a daily basis whether there are grounds for removing any of the aliens who are already present inside the country. The vast majority of these determinations are quickly made, but in some cases deciding whether an alien should be admitted or removed is not as easy. As a result, Congress has authorized immigration officials to detain some classes of aliens during the course of certain immigration proceedings. Detention during those proceedings gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made.

583 U.S. 281, 285–86 (2018).

---

[6] Lomeu submits that she has no criminal record, Lomeu Decl. ¶ 1, and thus is unlikely to be found a danger to the public. Lomeu was arrested and detained on October 2, 2025, when she reported to ICE for fingerprinting in connection with her I-765 Application for Employment Authorization on October 2, 2025. 2025 I-213. Therefore, it is unlikely she will be found to present a flight risk pending removal proceedings.

7

The Court explained, "to implement its immigration policy, the Government must be able to decide (1) who may enter the country and (2) who may stay here after entering." *Id.* at 286. Explaining § 1225, the Court stated, the "process of decision generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Id.* at 287. An "applicant for admission" is a noncitizen who "arrives in the United States, or 'is present' in this country but has not been admitted." § 1225(a)(1). Pursuant to § 1226(a)(3), "[a]ll aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers."

Section 1225(b) describes two classes of applicants for admission:  (1) noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" and "certain other aliens designated by the Attorney General in his discretion" and (2) a catchall provision "that applies to all applicants for admission not covered by § 1225(b)(1) … (with specific exceptions[)]"). *Jennings*, 583 U.S. at 287. Most noncitizens under § 1225(b)(1) are ordered removed "without further hearing or review" under § 1225(b)(1)(A)(i). *Id.* Others who fall under § 1225(b)(1) are detained when they state an intention to apply for asylum and are determined in an interview to have a credible fear of persecution. *Id.* Noncitizens covered under the broader scope of § 1225(b)(2) "'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country." *Id.* at 288. Under either subsection of § 1225(b), "applicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" *Id.* (quoting 8 U.S.C. § 1182(d)(2)(5)(A)). This type of "parole" is not an "admission" pursuant to 8 U.S.C. § 1182(d)(5)(A). *Id.*

8

> Introducing its discussion of § 1226, the *Jennings* Court states:
>
> Even once inside the United States, aliens do not have an absolute right to remain here. For example, an alien present in the country may still be removed if he or she falls "within one or more . . . classes of deportable aliens." § 1227(a). That includes aliens who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission. See §§ 1227(a)(1), (2).

*Id.* Noncitizens falling within this definition may be arrested and detained pending removal. *Id.* The default rule for arrest and detention is under § 1226(a): "[t]he Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Id.* (quoting § 1226(a)). Noncitizens falling under the default rule may be released by the Attorney General on bond or conditional parole. *Id.*

Section 1226(c) carves out an exception to the default rule of discretionary release in § 1226(a), applicable to "'any alien' who falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Id.* at 289. There are a narrow set of circumstances when the Attorney General may release someone who falls under § 1226(c). *Id.* In summary of this statutory framework, the Court explained, "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under § 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)."

      2.    *Hurtado*

The issue presented in *Hurtado*, a decision Respondents defend here, was whether the INA requires

> that all applicants for admission, even those like [Hurtado] who have entered without admission or inspection and have been residing in the United States for years without lawful status, be subject to mandatory detention for the duration of their immigration proceedings, and thus the Immigration Judge lacks authority over a bond request filed by an alien in this category?

9

*Hurtado*, 29 I&N Dec. at 220. Hurtado conceded that he was an "applicant for admission" under § 1225(a)(1) because he entered without inspection, but he argued he was not "seeking admission" because he had resided in the U.S. for almost three years. *Id.* at 221. The BIA found this argument unpersuasive because it did not answer the question of Hurtado's legal status. *Id.*

> The BIA found the plain language of the INA would not support a reading that
> 
> after some undefined period of time residing in the interior of the United States without lawful status . . . an applicant for admission is no longer "seeking admission," and has somehow converted to a status that render[s] him or her eligible for a bond hearing under . . . 8 U.S.C. § 1226(a).

*Id.* The BIA further disagreed with Hurtado's contention that "DHS' 'longstanding practice' of treating aliens who are present in the United States without inspection as detained under . . . 8 U.S.C. § 1226(a)" supported the conclusion that "Congress did not intend . . . § 1225(b)(2)(A), to apply to aliens who are arrested after having lived in the United States for more than 2 years[.]" *Id.* at 225-26. According to the BIA, the longstanding practice of the Government under § 1226(a) could not "somehow change or even eviscerate, explicit statutory text that is contrary to that practice." *Id.* at 226. The same was true in cases where DHS issued an arrest warrant in conjunction with a Notice to Appear and a Notice of Custody Determination pursuant to § 1226(a) because "the issuance of an arrest warrant does not endow an [IJ] with authority to set bond for an alien who falls under . . . § 1225(b)(2)(A)." *Id.* at 227.

        3.    *Petitioner's Argument*

Lomeu argues all individuals in the United States, regardless of their citizenship status or lack thereof, are entitled to protection under the Due Process Clause of the Fifth Amendment. Amended Petition ¶ 42 (citing *Zadvydas v Davis*, 533 US 678, 682 (2001); *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Reno v. Flores*, 507 U.S. 292, 3061 (1993); *Mathews v. Eldridge*, 424 U.S.

10

319, 333 (1976)). More specifically, Lomeu maintains that civil detention "for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Id.* (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). According to Lomeu, the Board of Immigration Appeal's ("BIA") interpretation of 8 U.S.C. § 1225(b)(2)(A) in *Hurtado*, as applied in her case, resulted in violation of her Fifth Amendment Due Process rights. *Id.* ¶¶ 43-56. Lomeu contends that the BIA, in *Hurtado*:

> established a dangerous sweeping rule that any non-citizen present in the United States without having been inspected and admitted who is arrested with or without a warrant is subject to mandatory detention under INA § 235(b)(2),[7] rather than the typical discretionary detention under INA § 236(a),[8] this is without regard of where the non-citizen was apprehended or how long the non-citizen has resided in the United States.

*Id.* ¶ 43. Lomeu asserts the BIA's decision in *Hurtado* and thus her detention under 8 U.S.C. § 1225(b)(2)(A) pursuant to *Hurtado* conflicts with Supreme Court decisions in *Zadvydas v. Davis*, 533 U.S. 678 (2011), *Demore v. Kim*, 538 U.S. 510 (2003), *Boumediene v. Bush*, 553 U.S. 723 (2008), *Matthews v. Eldridge*, 424 U.S. 319 (1976) and *United States v. Salerno*, 481 U.S. 739 (1987). *Id.* ¶ 44. Lomeu relies on multiple District Courts across the nation which have held mandatory detention under 8 U.S.C. § 1225(b)(2)(A), pursuant to the BIA's new interpretation of that provision in *Hurtado*, violates the statute and/or the detainee's right to due process. *Id.* ¶ 45.[9]

---

[7] Immigration and Nationality Act § 235(b)(2) is codified at 8 U.S.C. § 1225(b)(2).

[8] INA § 236(a) is codified at 8 U.S.C. § 1226(a).

[9] Lomeu points to *Lopez Benitez v. Francis*, No. 25-5937, 2025 WL 2371588, at *5 (S.D.N.Y. Aug. 13, 2025) (granting habeas relief); *Samb v. Joyce*, No. 25-6373, 2025 WL 2398831, at *3 (S.D.N.Y. Aug. 19, 2025) (granting habeas relief); *Sampiao v. Hyde*, No. 25-CV-11981, 2025 WL 2607924, at *7 (D. Mass. Sept. 9, 2025) (granting habeas relief); *Leal-Hernandez v. Noem*, No. 25-02428, 2025 WL 2430025, at *10 (D. Md. Aug. 24, 2025) (granting habeas relief); *Kostak v. Trump*, No. 25-1093, 2025 WL 2472136, at *3 (W.D. La. Aug. 27, 2025) (granting preliminary injunctive relief); *Mosqueda v. Noem*, No. 25-02304, 2025 WL 2591530, at *5 (C.D. Cal. Sept. 8, 2025) (granting preliminary injunctive relief). Amended Petition ¶ 45.

Lomeu argues that her detention pending removal proceedings is discretionary under 8 U.S.C. § 1226(a), and she is entitled to release or alternatively, an immediate bond hearing. *Id.* ¶¶ 46, 58. Based on her liberty interest in remaining in the United States with her husband of eleven years and two stepdaughters, Lomeu contends application of the balancing test announced by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) entitles her to the due process protection of a hearing to determine whether she presents a flight risk or a danger to the community. *Id.* ¶¶ 47-52. Lomeu further submits that because there are only two legitimate purposes for immigration detention, assuring the appearance at immigration proceedings and preventing danger to the community pending completion of removal, her detention does not serve those purposes and, therefore, violates her Fifth Amendment liberty interest. *Id.* ¶¶ 53-56.

    4.  *Respondents' Argument*

Respondents submit that Lomeu meets the three elements under 8 U.S.C. § 1225(b)(2) because she is: (1) an "applicant for admission"; (2) who is "seeking admission"; and (3) an examining immigration officer has determined she "is not clearly and beyond a doubt entitled to be admitted." Answer at 9. In support of this argument, Respondents submit that CBP charged Petitioner as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General," in violation of § 1182(a)(6)(A)(i)." *Id.* at 10. Lomeu is "seeking admission" because "[t]he phrase 'seeking admission' in § 1225(b)(2) must be read in context with 'applicant for admission' as defined by § 1225(a) . . . includ[ing] both those who arrive in the United States and those present without admission." *Id.* Respondents maintain that "[t]he words 'seeking admission' and 'applicant for admission' are not identical" because the "former is broader." *Id.* For example, "stowaways may seek admission by requesting asylum, yet stowaways are excluded from the

definition of 'applicant of admission.'" *Id.* at 11. Respondents further explain that "an applicant for admission must be physically in the United States, while an alien can 'seek admission in the United States or outside of it." *Id.* (citing *Romero v. Hyde*, No. 25-11631, 2025 WL 2403827, at *9 (D. Mass. Aug. 19, 2025)). According to Respondents, this explains why "in § 1225(a)(3), immigration officers must inspect all aliens 'who are applicants for admission or otherwise seeking admission.'" *Id.* (citing 8 U.S.C. § 1225(a)(3)). Finally, Respondents argue that Lomeu is mandatorily detained pursuant to § 1225(b)(2)(A), because an examining immigration officer determined that she "is not clearly and beyond a doubt entitled to be admitted." *Id.* at 12 (citing NTA.)[10]

Respondents further propose that because § 1225(b)(2)(A) authorizes Lomeu's detention, she has received all due process required under the Fifth Amendment. Answer at 19. They reach this conclusion because "the Constitution gives the political department of the government plenary authority to decide which aliens to admit, and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." *Id.* (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (citation modified)). Respondents contend due process requires only that Lomeu's detention comply with the relevant statute. *Id.* at 19, 20 (citing *Pipa-Aquise v. Bondi*, 2025 WL 2490657, at *2; *see also Thuraissigiam*, 591 U.S. at 138 (citation modified) (recognizing, as to aliens who have never "been admitted into the country

---

[10] Respondents point to *Vargas Lopez v. Trump*, No. 25-526, 2025 WL 2780351, at *9 (D. Neb. Sept. 30, 2025) (finding alien properly detained under § 1225(b)(2) because he was present in United States without having been admitted, and thus an applicant for admission under § 1225(a)); *Chavez v. Noem*, No. 25-023F25, 2025 WL 2730228, at *4-5 (S.D. Cal. Sept. 24, 2025) (same); *Pipa-Aquise v. Bondi*, No. 25-1094, 2025 WL 2490657, at *1 (E.D. Va. Aug. 5, 2025) (same); *Pena v. Hyde*, No. 25-11983, 2025 WL 2108913, at *2 (D. Mass. July 28, 2025) (upholding detention under § 1225(b)(2) of alien "present in the country but [who] has not yet been lawfully granted admission"). Answer at 12.

13

pursuant to law, the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.").

5. *Lomeu's Reply*

Lomeu disagrees with Respondents' contention that she is "an applicant for admission" and an "applicant seeking admission" because she is not affirmatively seeking to enter the country, has lived in the U.S. for twenty years, and has significant, longstanding social ties in the U.S. Reply Br. at 3. Further, she argues that subjecting her to mandatory detention without a final order of removal is likely to violate the Constitution because her first calendar hearing on Cancellation of Removal is scheduled for January 26, 2027, which is only the beginning of her removal proceedings. *Id.* at 4. In other words, permitting her prolonged detention without a bond hearing will violate her rights under the Fifth Amendment Due Process Clause. *Id.*

6. *Interpretation of the Statutory Provisions*

"[C]ourts must exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024). Courts, however, may seek guidance from agency interpretations, and such interpretations "may be especially useful" when they are "issued contemporaneously with the statue at issue, and which have remained consistent over time." *Id.* Where a statute delegates discretionary authority to an agency, the reviewing court must independently interpret the statute and "effectuate the will of Congress subject to constitutional limits." *Id.* at 395. "In an agency case as in any other, though, even if some judges might (or might not) consider the statute ambiguous, there is a best reading all the same—the reading the court would have reached if no agency were involved." *Id.* at 399 (citation modified). Courts should apply all relevant interpretive tools and conclude the best statutory interpretation. *Id.* at 400.

14

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *City & Cnty. of San Francisco, California v. Env''t Prot. Agency*, 604 U.S. 334, 350 (2025) (citation modified). Respondents' interpretation of § 1225(b)(2)(A) is incompatible with the overall statutory scheme, which the Supreme Court in *Jennings* described as (1) deciding who may *enter* the country under § 1225(b); and (2) deciding who may *remain* in the country after entering under § 1226(a), (c). 583 U.S. at 286. Respondents completely ignore the plain and longstanding distinction in U.S. immigration law between those noncitizens who are entering the country and those who remain after entering, focusing instead on the definitions of "applicant for admission" and misreading a misreading of the statutory phrase "seeking admission" to include the past-tense, an alien who already entered the country without inspection under § 1225. The best statutory interpretation, consistent with the *Jennings* Court's discussion of the overall statutory scheme, is that § 1225(b)(2) governs "applicants for admission at the border and mandates custody without bond while admissibility is determined" and § 1226(a) "applies to noncitizens already present and allows for detention pending removal, with bond hearings before an immigration judge." *Eliseo A.A. v. Olson.*, No. 25-3381, 2025 WL 2886729, at *2–4 (D. Minn. Oct. 8, 2025); *Lopez Benitez*, 2025 WL 2371588, at *6 ("[b]y reading [the] phrase [seeking admission] out of the statute, Respondents' interpretation of § 1225 clearly 'violates the rule against surplusage.'" (quoting *Martinez v. Hyde*, No. 25-11613, 2025 WL 2084238, at *6 (D. Mass. July 24, 2025)); *Sampiao*, 2025 WL 2607924, at *7 ("[t]he plain text of Section 1226(a) … indicates Congress's intent to establish a discretionary, rather than mandatory, detention framework for noncitizens arrested on a warrant"); *Leal-Hernandez*, 2025 WL 2430025, at *10 ("The Government appears willfully blind to the operation of 8 U.S.C. § 1226(a)" by ignoring the statutory text that an alien may be arrested and detained on

a warrant issued by the Attorney General pending a decision on removal); *Kostak*, 2025 WL 2472136, at *3 ("The *Jennings* analysis explains the necessity for both statutes by differentiating between the detention of arriving aliens who are seeking entry into the United States under Section 1225 and the detention of those who are already present in the United States under Section 1226"); *Mosqueda*, 2025 WL 2591530, at *5 ("The Court finds that the conflict is avoided by interpreting sections 1225(b)(2) and 1226(a) to apply to different sets of noncitizens—those "seeking admission" compared to those already in the country who are arrested and detained."); *Zumba v. Bondi*, No. 25-CV-14626, 2025 WL 2753496, at *10 (D.N.J. Sept. 26, 2025) (holding, in a factually similar situation to Lomeu's detention, that the "Petitioner's mandatory detention is not authorized by § 1225, serves no legitimate purpose, and amounts to punitive detention, warranting habeas relief"); *Pizarro Reyes v. Raycraft*, No. 25-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025) (citation modified) ("Whereas § 1225 governs removal proceedings for 'arriving aliens,' § 1226(a) serves as a catchall . . . § 1226(a) is the 'default rule' and 'applies to aliens already present in the United States' . . . inclusion of both provisions . . . is likely . . . a way for Congress to capture noncitizens who fall outside of the specified categories"); *Barrera v. Tindall*, No. 25-541, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (holding the text of § 1225 is focused "on inspections for noncitizens when they arrive" and "suggest[s] that Section of 1225 is limited to noncitizens arriving at a border or port and are presently 'seeking admission' into the United States.").

Lomeu's current detention fits squarely under § 1226(a). She entered the United States without inspection in 2005, and has lived in the United States for 20 years. NTA and Lomeu Decl. ¶¶ 1, 5. The day after her entry in 2005, CBP issued a form I-213, stating that Lomeu entered the U.S. at a place not designated as a port of entry, "thus she was not admitted, inspected or paroled

16

into the U.S. by a U.S. Immigration Official." 2005 I-213. This lack of inspection indicates Lomeu seeks *to remain* in the country under § 1226(a) as opposed to "seeking admission" under § 1225(b)(2)(A). Indeed, her 2005 I-213 states she was released on her own recognizance pursuant to § 1226(a). *Id.* She was not detained for removal proceedings upon entry into the United States under § 1225(b)(2)(A), an immigration judge ordered her removed *in absentia* on May 11, 2006. *In Absentia* Removal Order.

Many years later, after marrying a U.S. Citizen and raising her stepdaughters, Lomeu's request to reopen immigration proceedings was granted in 2021, Lomeu Decl. ¶¶ 7, 8, 25 and July 20, 2021 IJ Order. There is no reasonable interpretation of § 1225(b)(2)(A) that contemplates detention of noncitizens who have been ordered removed *in absentia* after entry and were years later granted leave to reopen removal proceedings. Lomeu sought to *remain in*, not enter, the United States by seeking permanent resident status upon her husband's Petition for Alien Relative, Not. of I-130, and later, in 2025, by seeking Cancellation of Removal and Adjustment of Status, Not. of I-485 and Not. of EOIR 42-B. Her detention began on October 2, 2025, not as she entered the country seeking admission, but when she was arrested and detained under § 1226(a), while reporting to be fingerprinted for her I-765 Application for Employment Authorization. 2025 I-213. Lomeu is not lawfully detained under § 1225(b)(2)(A). The Court turns to Lomeu's constitutional claims.

### 8. *Analysis of Constitutional Claims*

Lomeu's constitutional argument hinges on her liberty interest in freedom from immigration detention that does not serve a legitimate purpose, ensuring her appearance at removal proceedings and preventing a danger to the community. Amended Petition ¶¶ 53-56. This necessitates a hearing to determine whether her detention serves a legitimate purpose. *Id.*

17

Respondents counter that aliens who have never "been admitted into the country pursuant to law" are entitled to solely the due process protection expressly conferred by Congress as carried out by executive and administrative officers. Answer at 19-20. Even with this limited due process protection of inadmissible aliens under Thuraissigiam, 591 U.S. 103, 138-99, Lomeu has not been afforded her procedural due process rights under § 1226(a). The appropriate habeas relief is a bond hearing pursuant to 8 C.F.R. § 236.1(d).

D.     CONCLUSION

Lomeu is unlawfully detained under § 1225(b)(2)(A). The statute and her constitutional right to due process require that she be provided immediate release from unlawful detention. If Respondents arrest Petitioner under § 1226(a), they must conduct a bond hearing in New Jersey pursuant to 8 C.F.R. § 236.1(d), and immediately release Lomeu from detention if she is determined not to pose a flight risk or danger to the community. The Court will **GRANT** Counts 1 and 2 of Lomeu's Amended Petition and **DISMISS** Count 3 as **MOOT**, D.E. 3, and **DENY** her Motion for Temporary Restraining Order, D.E. 3, as moot.

An appropriate Order follows.

Dated: October 23, 2025

                                                                                  Evelyn Padin, U.S.D.J.